LAURA BUCKWALTER v. SCHOOL DISTRICT No. 42, NEOSHO COUNTY, KANSAS.

No. 12,630. (70 Pac. 605.)

SYLLABUS BY THE COURT.

1. SCHOOLS AND SCHOOL DISTRICTS—*Acquisition of Site by Condemnation Proceedings.* Condemnation proceedings by a school district in the exercise of the power of eminent domain for the purpose of acquiring a schoolhouse site, under the provisions of section 6131, General Statutes of 1901, divest the owner of title thereto, even though he at the time had only an equitable title, and thereafter received the legal title.

2. ———— *Notice to Owner Immaterial.* Such proceedings are efficient for that purpose although no notice thereof is provided for in that or any other statute or constitutional provision, and although no notice was given the owner.

3. ———— *Compensation not a Condition Precedent.* Unless prohibited by some constitutional or statutory provision, a school district may appropriate a portion of land belonging to a citizen for a schoolhouse site without first making .compensation, such appropriation being for a public purpose, and means being provided the owner for the determination of the value of the property so taken by due process of law.

Error from Neosho district court. L. STILLWELL, judge. Opinion filed November 8, 1902. Affirmed.

*David B. Crewson*, for plaintiff in error.

*J. L. Denison*, for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J. : This was an action in ejectment to recover the possession of one acre of land upon which was erected the schoolhouse of defendant in error.    This land was a portion of a tract known as ''Osage ceded lands.''    Prior to the time that plaintiff had settled upon this tract with a view of acquiring title thereto, and while it was yet government land, this school building was erected.    On November 14, 1885, the plaintiff in error, plaintiff below, having complied with the requirements of the federal laws, and made full payment for the land, received what is commonly known as a ''receiver's receipt,'' which evidenced her right to a patent for the land, which patent she received on the 28th day of December, 1886.    Proceedings were inaugurated by the school district to condemn the schoolhouse site, already occupied, on July 28, 1886.    These proceedings ripened into an order of condemnation, as provided by section 6131, General Statutes of 1901, that section being then in force, and were pleaded by the school district in defense to plaintiff's action.    The court below held that these proceedings were sufficient to vest title to the acre of land in dispute in the school district, and gave judgment in its favor and against the plaintiff.    She is here insisting that these proceedings were insufficient and void for two reasons.

She first contends that they were had while the land yet belonged to the government and before the plaintiff received her title, and, therefore, that she could not in any way be affected thereby.    It must be borne in mind, however, that, before these condemnation proceedings, she had done all the things required by the government to be by her performed, and had

made full payment for the land, and had already thereby been vested with the equitable title, needing only the legal title, which would come to her by the patent, to make her title in all respects perfect as against every one but the government.   She was the efficient owner, and, even as against the government, she was the equitable owner.   In addition to this, section 4831, General Statutes of 1901, which was then in force, provided :

"The usual duplicate receipt of the receiver of any land-office, or, if that be lost or destroyed, or beyond the reach of the party, the certificate of such receiver that the books of his office show the sale of a tract of land to a certain individual, is proof of the title equivalent to a patent against all but the holder of an actual patent."

Clearly, plaintiff in error was, at the time of these condemnation proceedings, the owner of this land, so that these proceedings, if in themselves sufficient, divested her of title thereto.   We therefore proceed to inquire whether they were sufficient for this purpose.

The objection made by the plaintiff in error to them is that no notice of their pendency or progress was given her.   This is true.   Was notice necessary?   It is claimed that private property may not be taken for public use without due process of law and full compensation, and that due process of law requires notice to be given to the party to be affected.   This land was taken for a public purpose and by the exercise of the power of eminent domain.   The only provision in our fundamental law limiting the exercise of this power is that contained in section 4 of article 12 of the constitution, which is :

"No right of way shall be appropriated to the use of any corporation, until full compensation therefor

be first made in money, or secured by a deposit of money, to the owner. . . ."

The bill of rights also provides that "all persons, for injuries suffered in person, reputation, or property, shall have remedy by due·course of law." .Now, section 6131, General Statutes of 1901, under which these condemnation proceedings were had, provides that, if any school district had in good faith', but by mistake or otherwise, built a schoolhouse upon land to which the school district at the time of the erection of such school building had not the equitable title, then, upon written application of the district board, it shall be the duty of the probate judge of the county in which such school site is situated to appoint three disinterested freeholders of such county, not residents of the district, to condemn and appraise such site ; that said appraisers shall proceed to make such appraisement within ten days and make report, describing the lands condemned and appropriated and the value thereof, which report is to be filed in the office of the register of deeds of the county, and by him recorded·as other instruments of writing affecting the title to real estate ; and directs that, within thirty days after the report is filed in the office of the register of deeds, the district board shall make payment to the county treasurer, for the use of the owner of such land, the amount of the appraised value thereof, and also the fees of the register of deeds for recording the report, "and upon such payment being made to such county treasurer by such district board, the title to such site . . . shall vest in such school district." It is further provided that either party may appeal from such appraisement to the district court, in the manner provided for appeals to be taken from the judgment

of justices of the peace in civil actions.   The procedure as there directed was strictly followed.

No notice is required by this section to be given to the owner of the land ; no constitutional provision requires it.   There is no constitutional or statutory requirement that payment shall be made as a prerequisite to the taking, or even made at all.   But, unquestionably, there is that principle underlying all constitutions and laws, which must be read into all of them, that private property may not be taken for public purposes without adequate compensation.   This is indicated in the bill of rights.   Notice to the citizen of the taking of his property for a public purpose is of no concern to him, for the right to take exists, independently of notice.   It is only when compensation for such taking comes to be considered that the owner of the condemned property becomes interested, and only of proceedings to determine that question is he entitled to notice, for upon that question only has he a right to be heard.   The taking precedes the assessment of damages.   The title passes upon the taking of the property.

The constitutions of many states provide, in substance, that the property of the citizen can only be taken *after* •compensation has been made.   In such states, of course, the making of compensation must precede the taking ;   hence   some   proceeding to determine the value, to which the owner has been a party, must precede the taking of the property or the passing of title.   But it may be urged that no provision was made by the law for the giving of notice of these condemnation proceedings, even to determine the value of the land taken, and therefore its assessment was void.   This might be granted, and yet the proceeding would vest title in the school district, for

the condition on which the title was so to vest was upon payment's being made to the county treasurer by the district board. Very true, the owner was not bound by the amount of the assessment. She might, if she chose not to accept the price fixed by the appraisers and paid by the school district to the county treasurer, have appealed from that award and had her day in court on such appeal, unless cut off by the lapse of time; or she might have resorted to an independent action against the school district to try the question of the value of the property which it had appropriated.

These views are fully sustained by the following cases taken from states having constitutional provisions similar to our own: *Commissioners' Court of Lowndes County v. Bowie*, 34 Ala. 461; *Cairo and Fulton R. R. Co. v. Turner*, 31 Ark. 494, 25 Am. Rep. 564; *Fox v. W. P. Railroad Co.*, 31 Cal. 538; *Powers et al. v. Armstrong et al.*, 19 Ga. 427; *The Jeffersonville, Madison and Indianapolis Railroad Company v. Daugherty*, 40 Ind. 33; *Cushman v. Smith*, 34 Me. 247; *Riche v. Bar Harbor Water Co.*, 75 Me. 91; *Haverhill Bridge Proprietors v. County Commissioners*, 103 Mass. 120, 4 Am. Rep. 518; *The People, ex rel. Green, v. Michigan Southern Railroad Company*, 3 Mich. 496; *Orr v. Quimby*, 54 N. H. 590; *Den v. The Morris Canal and Banking Company*, 24 N. J. L. 587; *Isaac Bates v. Thomas Cooper*, 5 Ohio, 115; *Pittsburg v. Scott*, 1 Pa. St. 309; *Commonwealth v. Pittsburg and Connellsville Railroad Co.*, 58 Pa. St. 26; *Hatermehl v. Dickerson et al.*, 8 Phil. Rep. 282.

As illustrative of the cases, and in support of the views herein announced, the following quotation is made from *People v. Adirondack Railway Co.*, 160 N. Y. 225, 238, 54 N. E. 689, 693:

"The state needs the property and takes it, and

while the citizen cannot resist, he has the right to insist upon just compensation, to be ascertained by an impartial tribunal.   It is a compulsory purchase by public authority, and the individual receives money in the place of the property taken.   He has a right to his day in court on the question of compensation, but he has no right to a day in court on the question of appropriation by the state unless some statute requires it.   (*Matter of Village of Middletown*, 82 N. Y. 196, 201.)   There is no necessity for any safeguard against taking, because the right to take is all there is of the power of eminent domain, and is necessarily conceded to exist when the existence of the power is admitted.   Safeguards become necessary only when the question of compensation is reached, and then the courts are careful to see that the owner receives all that he is entitled to.   Until then the courts could not help him, unless some statutory right were invaded, as the method of taking is within the exclusive control of the legislature.   If a statute requires judgment of condemnation, judgment must be had accordingly before the property can be taken, but otherwise a certificate of condemnation by an executive officer, followed by payment, satisfies every requirement of the constitution.   If the use is not public, the statute authorizing condemnation is void, but this question of law need not be settled in the proceeding to take, as it can be raised by the property-owner in a variety of ways.''

We, therefore, in this case hold that no notice was necessary to be given to plaintiff in error of the condemnation proceeding, in order that such proceeding should convey to the school district a good title to the schoolhouse site taken, and therefore the judgment of the district court was right and must be affirmed.

All the Justices concurring.