Nos. 35,395 and 35,418

THE STATE OF KANSAS, ex rel. JAMES S. LESTER, County Attorney of Jefferson County, *Appellant,* v. THE STONEHOUSE DRAINAGE DISTRICT No. 1, in Jefferson County, DON ROELOFSZ, RALPH BAKER and KATHRYN HOEKSTRA, as the Board of Directors of said Drainage District; and FRANK MARSH, doing business as the MARSH ENGINEERING COMPANY, *Appellees.*

(118 P. 2d 587)

Opinion filed November 8, 1941.

*James S. Lester,* county attorney, *A Harry Crane, James Malone* and *Clarence Malone,* all of Topeka, for the appellant.

*Walter T. Chaney* and *Lawrence J. Richardson,* both of Topeka, for the appellees.

The opinion of the court was delivered by

ALLEN, J.: This action was to enjoin the construction of certain projected drainage improvements and to compel a reassessment of the costs of the project. In 1938 and 1939 the defendant drainage district prepared plans for the proposed drainage improvements, assessed benefit costs upon the lands within the district, issued and sold the bonds, the proceeds to be used to pay the cost of the improvements. A contract was let, construction commenced, which was shortly enjoined by the state for the reason the defendants failed to secure the approval of the chief engineer of water resources. That phase of the litigation came before this court in *State, ex rel., v. Stonehouse Drainage Dist.,* 152 Kan. 188, 102 P. 2d 1017, where it was held that the approval of the chief engineer of water resources was a condition precedent to the legality of the undertaking. The drainage district after certain alterations and

changes in the plans secured the approval of the chief engineer and thereupon again commenced the construction of the drainage project. This action followed.

In the petition of plaintiff it is alleged that in 1939 the board of directors of the drainage district entered into a contract with one Frank Marsh to construct the improvements; that defendants were enjoined from proceeding under that contract; that the plans upon which the contract was based have never been approved by the chief engineer of the water resources; that the defendant district issued a work order to the defendant Frank Marsh under the contract of 1939; that such contract is unauthorized by law; that the defendant board has never made or executed a contract under plans approved by the chief engineer; that the defendant board caused a new set of plans to be prepared and submitted to the chief engineer; that such plans were made after benefits were assessed against land in the district; that a reassessment of benefits is necessary before a contract under the new plans could be lawfully entered into by the defendant district, and that under the new set of plans many landowners in the district would receive no benefits. Plaintiff prayed that defendants be permanently restrained and enjoined from proceeding with the project under such revised plans.

The defendants in their answer allege that the plans for the proposed construction work were approved by the chief engineer as provided by law on April 19, 1941; deny that a second set of plans was prepared by defendants; that the charges and assessments levied on the taxpayers in the district were duly determined by the board of directors of the district and by the court, and that the time has long since passed in which the legality of such assessments could be questioned.

A trial was had on the issues joined. The court made findings of fact and returned conclusions of law.

The findings of fact may be summarized in part.

The defendant district on July 3, 1939, entered into a contract with Frank Marsh to construct certain improvements in the drainage district; that soon thereafter Marsh commenced work on the project but before the work was concluded was enjoined from further proceeding with such work until such time as the plans for the improvements should be submitted to and approved by the chief engineer of water resources, "and that plans and specifications for the proposed construction work and improvements were approved by

the chief engineer of the division of water resources of the state of Kansas, on the 19th day of April, 1941."

The court found that on the ————· day of June, 1941, Marsh, at the request of the drainage board, again commenced work on the project and that on the 14th day of June he 'was temporarily restrained from further construction.

We quote certain findings:

"7. That prior to July 3, 1939, the date of the contract between the Drainage Board and the said Frank Marsh for the construction of improvements on said Stonehouse creek, the board of directors appointed appraisers to assess benefits to all benefited lands in the district and that such appraisers qualified and made such assessments and return thereof all as provided by law. That thereafter certain appeals were taken from the assessments as returned by the appraisers and upon the trial thereof certain modifications and changes in the assessments were ordered by the district court, which modifications and changes were approved by the drainage board and that thereafter and before the letting of the contract on July 3, 1939, bonds for said improvement were issued and sold by the district as provided by law.

"8. That no further assessments, change in assessments, relevy of assessments, or supplemental assessments of benefits have been made by said board, or its agents, since the approval of the plans and specifications by the chief engineer of the Division of Water Resources of the state of Kansas.

"9. That no other additional or supplemental contract has been entered into by and between the drainage board and Frank Marsh for the construction of said improvement since April 19, 1941, but that defendants propose to proceed with the construction of said work under contract of July 3, 1939.

"10. That exhibit D introduced herein, being the plans upon which the assessments of benefits were made by the drainage district provides for the proposed improvement of the main channel of Stonehouse creek as indicated and shown upon said plan. That this set of plans for improvement was never approved by the chief engineer of the Division of Water Resources of the state of Kansas.

"11. That exhibit C introduced herein, being the plan of improvement approved by the chief engineer of the Division of Water Resources of the state of Kansas, provides for the construction of a main channel for Stonehouse creek and further provides for the construction of four lateral ditches within said district emptying into the main channel for the purpose of providing additional drainage to outlying portions of said district, the plans for the construction of the main ditch being changed or altered in the depth and width of said ditch at certain places and the elimination of dykes or levees in certain places, all as shown and indicated on exhibit C.

"12. That the drainage board at this time, under its contract with defendant Marsh, proposed to construct and improve the main channel of Stonehouse creek under the plans and specifications approved by the chief engineer of the Division of Water Resources of the state of Kansas, as shown by exhibit C herein. That said board does not at this time expect to proceed with the

immediate construction of the lateral ditches shown on exhibit C, but the construction of said laterals is a future project to be completed at a later date.

"2a. Exhibit 'C,' above referred to being the approved plan, provides for the greater carrying capacity in the main ditch, than did exhibit 'D' upon which the assessments of benefits were made. But the evidence discloses, and the court finds, that the landowners to the west of the main channel will receive the same benefits from the ditch under exhibit 'C,' as they would have received from the ditch under exhibit 'D,' which benefits have been determined by this court in a former trial at a prior term of this court."

The court returned conclusions of law. We quote conclusions 3 and 4:

"3. That the drainage district board are not required as a matter of law to construct all of the improvements shown on the plans at this time.

"4. That the drainage board are not required as a matter of law to reassess the benefits to the land within the district after the approval of the plan of improvement by the chief engineer of the Division of Water Resources of the state of Kansas."

The first set of plans submitted to the chief engineer of water resources, and which were not approved by him, are referred to in the record as plaintiff's exhibit "D." The plans approved by the chief engineer are referred to in the record as plaintiff's exhibit "C."

On July 14, 1941, a restraining order was issued by the court. Upon final hearing the court entered an order setting aside the restraining order and refusing the application of plaintiff for a permanent injunction. The appeal is from the order and judgment so entered.

Our statute G. S. 1935, 24-1071, provides, and in *State, ex rel., v. Stonehouse Drainage Dist.*, supra, this court held, that the approval of the chief engineer of water resources was a condition precedent to the legality of an improvement project.

The authority of the board of the drainage district to make the proposed improvements must be found in the statutes. The basic act of 1905 and amendments thereto must be read and construed with section 24-1071.

The plans prepared by the engineer for the district, upon which the assessment of benefits was made, and under which the contract was let and the preliminary work on the project was made were never approved by the chief engineer of the division of water resources. (See finding 10.)

The plans that were approved by the chief engineer provided for the construction of four lateral ditches within the district connecting

with the main channel for the purpose of providing additional drainage for outlying portions of the district. The plans for the construction of the main ditch were also changed and altered. (See finding 11.)

Under the original contract with Marsh the engineer of the drainage board was authorized to make alterations in the plans and to specify an increase or decrease in the work to be done; if extra work was specified such extra work was to be paid for according to the basic price or schedule fixed in the original contract; if the change decreased the work to be done, the amount to be paid to the contractor was to be decreased proportionately. The court found that the cost of the changes and alterations in the main ditch to be within twenty percent of the contract price. Defendants contend that as the cost of the changes is within the latitude allowed by the contract, the original contract with Marsh is valid.

The argument ignores the fact that the chief engineer of water resources refused to approve the plans under which the assessment of benefits was made and the contract was awarded to Marsh. The plans finally approved by the chief engineer contained a comprehensive scheme for the drainage of the district.

Under our statutes, before any work shall be contracted for (sec. 24-418) and before any assessment of costs against the landowners benefited by the work shall be made (sec. 24-422) plans and specifications for such work and an estimate of the cost must be made by an engineer appointed by the board, and as a condition precedent to the legality of the proceedings must be approved by the chief engineer of the division of water resources.

After the assessments of costs are made as provided in section 24-422, all persons aggrieved by the report of the assessors are, under section 24-424, given an opportunity to contest the justness of the assessment. We find no provision in the drainage act which authorizes the drainage board to divide a drainage project into two or more units—to assess the costs as to one section or unit against some of the landowners in the district, to let a contract for the construction of such part of the work—and thereafter to reassess the costs against the landowners who may be benefited by the entire drainage project, and to let another contract for the completion of the work called for by the plans approved by the chief engineer. Yet, in substance and effect, such is the contention that is urged by defendant.

As we have seen, the legality of the proceedings depends upon the

approval of the plans and specifications by the chief engineer of the division of water resources. The record discloses that the plans approved by that official called not only for the improvement of the main ditch but for four laterals—a comprehensive plan for the drainage of the district.

Manifestly the statute contemplates that the assessments of the costs against the landowners must be based on the cost of the entire drainage project as approved by the chief engineer.

As the provisions of the statutes were not followed, the assessment of costs against the landowners under the original plans and the contract entered into with Marsh were illegal and void. The judgment is reversed and the cause remanded with directions to the trial court to make and enter an order permanently restraining defendants, from further work under the unapproved plans.

In view of our judgment the appeal in case No. 35,418 from the order of September 5, 1941, reinstating the temporary restraining order during the pendency of the appeal becomes immaterial and is dismissed.